UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Karen Joan McDowell,

    Plaintiff,

    v.                                                         Civil Action No. 2:15-cv-87

Carolyn W. Colvin, Acting Commissioner
of Social Security Administration,

    Defendant.

## OPINION AND ORDER
(Docs. 6, 9)

      Plaintiff Karen McDowell brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Pending before the Court are McDowell's motion to reverse the Commissioner's decision (Doc. 6), and the Commissioner's motion to affirm the same (Doc. 9). For the reasons stated below, McDowell's motion is GRANTED; the Commissioner's motion is DENIED; and the matter is REMANDED for further proceedings and a new decision.

## Background

      McDowell was 45 years old on her alleged disability onset date of February 27, 2012. She attended college for three years, and thereafter obtained her paralegal certificate. (AR 30, 32.) She has work experience as an accounts payable supervisor, an

asset controller, a payroll director, an accounting and benefits manager, a staff accountant, and an office manager.  (AR 33–34, 155.)  She is divorced, and has three adult children.  (AR 30.)  She lives in Bradford, Vermont with her fiancé and her 20-year old daughter.  (AR 30–31.)

On February 27, 2012, McDowell underwent a surgical hysterectomy.  (AR 33, 311–36.)  Around that time, she stopped working at her job as an accounts payable supervisor with Green Mountain Coffee.  (AR 31–33.)  Within "a couple of weeks" after having the surgery (AR 37), McDowell began experiencing vertigo symptoms, including feeling "very foggy," "slightly disoriented," and off balance (AR 36).  She also experienced chronic nausea, headaches, dizziness, inability to focus or concentrate, and forgetfulness.  (AR 36–39.)  Although McDowell testified at the December 2013 administrative hearing that she has had "some improvement" in her symptoms (AR 40), she still experiences vertigo symptoms—including nausea, dizziness, and headaches—when riding in a car, scrolling with a computer mouse, and doing any visually oriented activities such as reading, watching television, and viewing movement on a computer screen (AR 41–42).

In August 2012 and January 2013, respectively, McDowell filed applications for SSI and DIB, alleging disability beginning on the date of her hysterectomy, February 27, 2012.  In her disability application, McDowell alleges that she has been unable to work as a result of her hysterectomy, vertigo symptoms, and migraine headaches.  (AR 138.)  Her applications were denied initially and upon reconsideration, and she timely requested an administrative hearing.  On December 3, 2013, Administrative Law Judge (ALJ)

Matthew Levin conducted a hearing on the disability application. (AR 29–53.) McDowell appeared and testified, and was represented by counsel. A vocational expert (VE) also testified at the hearing. On December 17, 2013, the ALJ issued a decision finding that McDowell was disabled from February 27, 2012 through October 31, 2013, but was not disabled from November 1, 2013 through the date of the decision. (AR 11–22.) Thereafter, the Appeals Council denied McDowell's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–3.) Having exhausted her administrative remedies, McDowell filed the Complaint in this action on April 21, 2015. (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Levin determined that McDowell was disabled from February 27, 2012 through October 31, 2013, due to the severe impairments of vertigo and headaches.  (AR 11, 15, 18.)  The ALJ further found that, on November 1, 2013, "medical improvement" occurred and McDowell's disability ended.  (AR 19.)  The ALJ explained that, although McDowell still had the severe impairments of vertigo and headaches from November 2013 forward, she had the RFC to perform "light work," as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), during that period, except as follows:

4

> [McDowell] can occasionally climb, balance, crouch, stoop, crawl, and kneel. [She] can perform simple, unskilled work, and can maintain attention and concentration for two-hour increments over an 8-hour workday and 40-hour workweek. She can perform limited reading of either printed or computer material, meaning less than 10 percent of the workday.

(*Id.*) Given this RFC, the ALJ found that McDowell was unable to perform her past relevant work. (AR 20.) Based on testimony from the VE, however, the ALJ determined that there were jobs existing in significant numbers in the national economy that McDowell could perform, including the jobs of cleaner, sales attendant, and collator operator. (AR 21.) The ALJ concluded that, although McDowell was disabled from February 27, 2012 through October 31, 2013, the disability ended on November 1, 2013, when she was capable of making a successful adjustment to work. (AR 21–22.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence

supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

### I. Medical Improvement

McDowell argues that the ALJ erred in his assignment of a closed period of disability, ending on October 31, 2013, because substantial evidence does not support the finding that McDowell has medically improved such that she is able to work. The Court agrees.

Termination of disability benefits can occur when medical improvement restores a recipient's ability to work. 42 U.S.C. 423(f); 20 C.F.R. §§ 404.1594, 416.994; *see also Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *De Leon v. Sec'y of Health &*

*Human Servs.*, 734 F.2d 930, 937 (2d Cir. 1984) ("If the claimant's condition improves to the point where he or she is able to engage in substantial activity, benefits are no longer justified, and may be terminated by the [Commissioner]."); *Baker v. Comm'r of Soc. Sec.*, No. 3:12-CV-1715, 2014 WL 1280306, at *4 (N.D.N.Y. Mar. 27, 2014) ("[B]enefits can only be terminated if there is substantial evidence demonstrating a 'medical improvement' which enables the individual to engage in substantial gainful activity.") (internal quotation marks omitted). "Medical improvement" means "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] w[as] disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.* Before terminating previously awarded benefits, the Commissioner "must compare 'the current medical severity of th[e] impairment[ ] . . . to the medical severity of that impairment[ ] at th[e] time' of the most recent favorable medical decision." *Veino*, 312 F.3d at 586–87 (alterations in original) (quoting 20 C.F.R. § 404.1594(b)(7)).

To determine whether or when to terminate previously awarded benefits due to medical improvement, the Commissioner uses an eight-step sequential analysis instead of the usual five-step analysis set forth above. *See* 20 C.F.R. §§ 404.1594(f)(1)–(8), 416.994(b)(5)(i)–(vii). Although this analysis is used most commonly at subsequent "continuing disability review" proceedings, several circuits have held that it is also

appropriate for initial-application determinations resulting in benefits awards for closed periods.  *Deronde v. Astrue*, Civil Action No. 7:11-998, 2013 WL 869489, at *2 (N.D.N.Y. Feb. 11, 2013), *report and recommendation adopted*, No. 7:11-CV-0998 (GTS/ESH), 2013 WL 868076 (N.D.N.Y. Mar. 7, 2013) (listing cases).  The Second Circuit has not confirmed whether this eight-step process is appropriate for closed-period disability cases like this one, but district courts in this Circuit have noted that it is an appropriate standard.  *Id.* (citing *Chavis v. Astrue*, No. 5:07–CV–0018 (LEK/VEB), 2010 WL 624039, at *6 (N.D.N.Y. Feb. 18, 2010); *Abrams v. Astrue*, No. 06-CV-0689-JTC, 2008 WL 4239996, at *2 (W.D.N.Y. Sept. 12, 2008)).  The Commissioner has the burden of proving each step of the analysis under the medical improvement standard.  *Deronde*, 2013 WL 869489, at *3; *see* 20 C.F.R. §§ 404.1594(f)(1)–(8), 416.994(b)(5)(i)–(vii); *see also Chavis*, 2010 WL 624039, at *4 ("medical improvement standard requires the Commissioner [to] meet a burden of showing, by substantial evidence, that a medical improvement has taken place in a claimant's ability to perform work activity") (alteration in original) (internal quotation marks omitted); *Abrams*, 2008 WL 4239996, at *2 ("The Commissioner has the burden of persuasion to demonstrate medical improvement, in accordance with the eight-step sequential evaluation process set forth in the Regulations."); *Suriel v. Comm'r of Soc. Sec.*, No. CV-05-1218 (FB), 2006 WL 2516429, at *4 (E.D.N.Y. Aug. 29, 2006) ("The Commissioner has the burden of persuasion to prove that the individual is currently able to engage in substantial gainful activity.").

    The Commissioner asserts that, regardless of whether the usual five-step sequential analysis or the eight-step medical improvement analysis is followed, "the

ALJ's ultimate determination satisfies the requirement that it be supported by substantial evidence of record." (Doc. 9 at 15.) The Court disagrees, and finds that the ALJ's justification for the determination of medical improvement is not supported by substantial evidence. Specifically, substantial evidence does not support the ALJ's finding that on or around November 1, 2013, McDowell improved to the point of no longer being disabled.

The evidence cited by the ALJ in support of his finding that McDowell showed "[m]edical improvement" "as of November 1, 2013" (AR 19) consists of: (1) three medical records, (2) McDowell's hearing testimony, and (3) McDowell's appearance and conduct at the administrative hearing. The medical records cited by the ALJ (*see* AR 19 (citing AR 418, 558, 576–77)) do not indicate improvement in McDowell's condition. One of the records cited–a treatment note prepared by neurologist Dr. Morris Levin—is particularly unhelpful in demonstrating McDowell's medical improvement as of November 2013, because it was prepared in March 2013, a date falling well within the period that the ALJ found McDowell to be disabled. (AR 418.) Another of the records cited by the ALJ—a progress note prepared by occupational therapist Megan Todd—is similarly unhelpful for the same reason: it was prepared in October 2013, a date falling within the period that the ALJ found McDowell to be disabled. (AR 558–59.) Moreover, Todd's progress note merely states that there was "some improvement in [McDowell's] nausea" (AR 558) and "good progress with cognitive skills" (AR 560), not that there was overall improvement such that McDowell no longer required treatment for her vertigo symptoms and was able to work. The note states that McDowell's visual deficits persisted (AR 558); that there were "new issues with slight numbness in her hands and

9

decrease in fine motor coordination" (*id.*); and that McDowell presented with "limited functional performance due to impaired visual tracking, intermittent symptoms of diplopia ('shadowing' of print), nausea with eye motion, and cognitive impairments including impaired shifting attention" (AR 560). The note concludes by recommending that McDowell continue occupational therapy "to address her visual scanning and to assess her fine coordination and high-level cognitive skills." (*Id.*)

The third medical record relied on by the ALJ in support of his finding of medical improvement is a treatment note written by neurologist Dr. Elijah Stommel in October 2013. (AR 576–66.) Like the above-described medical records, this treatment note was prepared within the period that the ALJ found McDowell to be disabled (prior to November 1, 2013), and thus is not helpful in showing McDowell's medical improvement *after* that period. The ALJ cites the treatment note to support the proposition that McDowell "experienced only some occasional mental fogginess by October of 2013." (AR 19 (citing AR 576).) But reading the note as a whole, it does not indicate that Dr. Stommel believed McDowell had experienced medical improvement. Rather, the Doctor recorded that his 14-point review of McDowell's systems was "remarkable for some occasional fogginess," headaches including a history of chronic migraines, vertigo, and weight gain. (AR 576.) In sum, the three medical records cited by the ALJ in support of his medical improvement finding do not constitute substantial evidence to support that finding.

As stated above, the ALJ also relies on McDowell's testimony and behavior at the administrative hearing to support his finding of medical improvement. (*See* AR 19–20.)

10

This evidence, like the medical records relied on by the ALJ, is also not sufficient to meet the Commissioner's burden of demonstrating McDowell's medical improvement as of November 1, 2013.  Although McDowell testified at the hearing that she experienced "some improvement" in certain areas, including "motion tolerance" (AR 40), she explained that she still suffers from dizziness, nausea, disorientation, and headaches (AR 41–42).  The ALJ's statement that McDowell testified about "the vast improvements she had made since beginning treatment for her symptoms" is not supported.  (AR 20.)  Nor is the ALJ's statement that McDowell's testimony "confirmed that she had improved by [November 1, 2013]."  (AR 19.)  Finally, the ALJ observed that McDowell "appeared to have no difficulty offering a full medical and vocational history as well as sustain focus throughout questioning" during the administrative hearing.  (*Id.*)  This finding is not entitled to significant weight, given that the ALJ was not qualified to form an opinion about McDowell's medical condition based merely on her testimony at a hearing which lasted less than 40 minutes including vocational expert testimony.  (AR 29, 53.)  *See Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983) ("ALJ's observation that [claimant] sat through the hearing without apparent pain, being that of a lay person, is entitled to but limited weight, and since only a 40-minute period was involved[,] it is not inconsistent with the medical evidence and [claimant's] own testimony") (citation omitted).

     For these reasons, the ALJ erred in his determination that McDowell experienced "medical improvement" as of November 1, 2013, such that McDowell's disability ended on that date.

## II. Treating Physician Opinions

The ALJ also erred in his analysis of the opinions of treating neurologist Dr. Stephen Lee. After treating McDowell for approximately 18 months, Dr. Lee opined in November 2013 that, due to her vertigo and migraine headaches, McDowell would need to take unscheduled one-to-two-hour breaks during an eight-hour workday (AR 549), would be "off task" for "25% or more" of a typical workday (AR 554), and would be absent from work for "[m]ore than four days per month" (AR 555). (*See* AR 552.) Dr. Lee further opined that, due to "daily impairment of attention and concentration," McDowell would be incapable of even low-stress jobs. (AR 548.) The ALJ gave "great weight" to these opinions, "*as applied to the period prior to October 31, 2013*," finding them to be "generally consistent with the totality of the medical evidence on record." (AR 17 (emphasis added).) Yet *for the period beginning on November 1, 2013*, the ALJ gave these same opinions "little weight," "as [they] are inconsistent with [McDowell's] hearing testimony regarding her improvements as well as the medical evidence from October of 2013 moving forward." (AR 20.)

The treating physician rule requires ALJs to give "controlling weight" to the opinions of a claimant's treating physicians regarding the nature and severity of the claimant's impairments, provided that those opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31–32 (2d Cir. 2004); *Shaw*, 221 F.3d at 134. When controlling weight is not given to a treating physician's opinions (because

12

they are not "well-supported" by other medical evidence or are "inconsistent" with other substantial evidence), the ALJ must consider the following factors in determining how much weight, if any, to give the opinions: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinions are with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Halloran*, 362 F.3d at 32; *Shaw*, 221 F.3d at 134.

Treating physician opinions may be rejected based on the ALJ's proper consideration of any of these factors, and the ALJ need not expressly recite each factor in his decision.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.") (citing *Halloran*, 362 F.3d at 31–32).  Nonetheless, ALJs must "always give good reasons" for the weight they assign to a treating source's opinions, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and failure to do so is ground for remand, *Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion[s] and we will continue remanding when we encounter opinions from ALJ[]s that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion[s].").  Examples of "good reasons" to discount the opinions of a treating physician include the following: the opinions are inconsistent with the bulk of the other

13

substantial evidence, such as the opinions of other medical sources, *see Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 643–44 (2d Cir. 2007); *Veino*, 312 F.3d at 588; the opinions are internally inconsistent, *see Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012); the physician's relationship to the claimant is "limited and remote," *see Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011); and the treating source lacked underlying expertise and gave only brief, conclusory opinions unsupported by clinical findings or other evidence, *see* 20 C.F.R. § 404.1527(c)(3), (5).

In assigning weight to Dr. Lee's opinions, the ALJ neglected to consider that Dr. Lee had treated McDowell from June 2012 through the date of his opinions in November 2013, and that Dr. Lee specialized in neurology, making him uniquely qualified to opine about McDowell's mostly neurologic symptoms. More importantly, the ALJ failed to give good reasons for affording great weight to Dr. Lee's opinions for the period before November 1, 2013 but only little weight to those same opinions for the period beginning on that date. The ALJ provides very little explanation for this critical distinction, other than to state as follows: "as applied to the period prior to October 31, 2013," Dr. Lee's opinions are "generally consistent with the totality of the medical evidence on record, which indicates severe symptoms of dizziness, imbalance, nausea, mental fogginess, and headaches" (AR 17); but, "as applied to the period beginning on October 31, 2013," Dr. Lee's opinions are "inconsistent with [McDowell's] hearing testimony regarding her improvements as well as the medical evidence from October of 2013 moving forward" (AR 20). The evidence relied on by the ALJ in support of the post-October 2013 finding is the same evidence that the ALJ relied on in support of his

14

medical improvement finding—three medical records dated prior to November 1, 2013 (and thus prior to the period when the ALJ found McDowell to have experienced medical improvement) and McDowell's testimony and appearance at the administrative hearing. For the reasons explained above, that evidence does not support the ALJ's finding of medical improvement. Furthermore, Dr. Lee's opinions are dated November 21, 2013, and they make no mention of medical improvement starting around that time or earlier.

Thus, the ALJ erred in his analysis of the opinions of treating physician Dr. Lee.

## Conclusion

The ALJ determined that McDowell was disabled through October 31, 2013, but that she experienced medical improvement on November 1, 2013, to an extent that she was no longer disabled. In a case like this, where the claimant's "medical improvement" is the critical issue, the reviewing court must focus on the narrow question of whether substantial evidence supports the ALJ's finding of medical improvement. Importantly, it is the Commissioner's burden to show, by substantial evidence, that the claimant medically improved to an extent that she was able to engage in substantial gainful activity. As explained above, the Commissioner has not made that showing, i.e., the ALJ's finding of medical improvement starting on November 1, 2013 is not supported by substantial evidence. Moreover, the ALJ erred in his analysis of the treating physician's opinions.

Therefore, the Court GRANTS McDowell's motion (Doc. 6), DENIES the Commissioner's motion (Doc. 9), and REMANDS for further proceedings and a new decision.

Dated at Burlington, in the District of Vermont, this 4th day of May, 2016.

                                           /s/ John M. Conroy         
                                           John M. Conroy
                                           United States Magistrate Judge